DUANE MORRIS LLP
Suzan Jo
1540 Broadway
New York, NY  10036-4086
(212) 692-1088
(212) 214-0924 (fax)

Lauren Lonergan Taylor (admitted *pro hac vice*)
Catherine E. Beideman (admitted *pro hac vice*)
30 S. 17th Street
Philadelphia, PA 19103
(215) 979-1000

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A. (F/K/A THE BANK OF NEW YORK TRUST COMPANY, NATIONAL ASSOCIATION), AS TRUSTEE FOR MORGAN STANLEY CAPITAL I INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-IQ14, <br><br>                    Plaintiff, <br><br>          v. <br><br> PETER H. GEBERT, <br> ELLEN J. GEBERT, <br> HAMPTON C. RANDOLPH, and <br> EVELYN M. RANDOLPH, <br><br>                    Defendants. | No. 13-cv-06988 (PKC) |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO <u>TRANSFER VENUE</u>

# TABLE OF CONTENTS

**Page**

I.     Introduction ..................................................................................................1

II.    Argument .....................................................................................................1

     A.    Venue is Proper in this Court .................................................................. 1

          1.    Standard of Review For A Motion To Dismiss For Improper Venue ........ 1

          2.    Defendants Consented to Jurisdiction and Venue in this Court ................. 2

          3.    Should The Court Find That Venue is Not Proper in This Court, The Appropriate Remedy is a Transfer of Venue ................................................ 5

     B.    Plaintiff's Fraud and Conversion Claims Should Not Be Dismissed .................... 5

          1.    Standard of Review For A Motion to Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted ................................................. 5

          2.    Plaintiff's Fraud and Conversion Claims Are Not Simply Restated Tort Claims .......................................................................................... 6

          3.    The Economic Loss Doctrine Does Not Apply to Plaintiffs' Fraud and Conversion Claims ................................................................................. 10

          4.    Plaintiff's Fraud Claim is Adequately Pled ............................................. 12

          5.    Defendants Had a Duty To Disclose Under Applicable New York Law . 14

          6.    Plaintiff's Demand for Punitive Damages is Proper ................................ 16

III.    Conclusion ................................................................................................17

DM3\2350105.3

# TABLE OF AUTHORITIES

## Cases

*125 West 22nd St. Holding, LLC v. Calabrese Associates, Inc.*, No. 602315/07, 2008
N.Y. Misc. LEXIS 10163 (N.Y. Sup Ct. Aug. 1, 2008) ....................................................... 7-8

*A.I. Credit Corp. v. Liebman*, 791 F. Supp. 427 (S.D.N.Y. 1992) ................................................4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................6

*Bank of Am., N.A. v. Wilmington Trust FSB*, 943 F. Supp. 2d 417 (S.D.N.Y. 2013) ....................1

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................5

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d. Cir. 1993) ............................................... 14-16

*Breeden v. Tricom Bus. Sys., Inc.*, 244 F. Supp. 2d 5 (N.D.N.Y. 2003)........................................4

*Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 95 A.D.2d 5, 22-23 (N.Y. App. Div. 4th
Dep't 1983) ...............................................................................................................................10

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .......................................................5

*Coface v. Optique DuMonde, Ltd.*, 521 F. Supp. 500 (S.D.N.Y. 1980) ........................................3

*Computech Int'l, Inc. v. Compaq Computer Corp.*, No. 02-2628, 2004 U.S. Dist. LEXIS
9120 (S.D.N.Y. May 21, 2004).................................................................................................11

*Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157 (S.D.N.Y. 2012)....................................................13

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975 (2d Cir. 1996)........................................................2

*Edwil Industries, Inc. v. Stroba Instruments Corp.*, 131 A.D.2d 425 (N.Y. App. Div. 2d
Dep't 1987) ............................................................................................................................ 8-9

*EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265 (S.D.N.Y.
2004) .................................................................................................................................... 11-12

*ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542 (S.D.N.Y. 2008) ..........................................4

*Genna v. Sallie Mae, Inc.*, No. 11-7371, 2012 U.S. Dist. LEXIS 54044 (S.D.N.Y. April
16, 2012) ....................................................................................................................................10

*Green v. Beer*, No. 6-4156, 2009 U.S. Dist. LEXIS 27503 (S.D.N.Y. March 31, 2009)............16

*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993).....................................13

*JSP Int'l v. Tri-Tech Grp., Inc.*, No. 94-2422, 1995 U.S. Dist. LEXIS 9684 (S.D.N.Y. July 13, 1995)..................................................................................................................4

*Kubin v. Miller*, 801 F. Supp. 1101 (S.D.N.Y. 1992) .......................................................8

*Laumann Mfg. Corp. v. Castings USA, Inc.*, 913 F. Supp. 712 (E.D.N.Y. 1996) ...........4

*Millgard Corp. v. E.E. Cruz/Nab/Frontier-Kemper*, No. 99-2952, 2002 U.S. Dist. LEXIS 23921 (S.D.N.Y. Dec. 12, 2002)..............................................................................3

*Moses v. Martin*, 360 F. Supp. 2d 533 (S.D.N.Y. 2004) ...................................................8

*Nat'l Union Life Ins. Co. v. Casmalia Res., Ltd.*, No. 89-1045, 1990 U.S. Dist. LEXIS 8502 (S.D.N.Y. July 11, 1990) ...................................................................................2

*Sanderson v. Horse Cave Theatre 76*, 881 F. Supp. 2d 493 (S.D.N.Y. 2012) ................1

*Schaeffer v. Kessler*, No. 12-8576, 2013 U.S. Dist. LEXIS 38781 (S.D.N.Y. March 20, 2013) .........................................................................................................................12

*State v. Gen. Motors Corp.*, 120 Misc. 2d 371 (N.Y. Sup. Ct. 1983)....................... 15-16

*Zaccaro v. Shah*, 746 D. Supp. 2d 508, 522 (S.D.N.Y. 2010)........................................15

**Statutes**

28 U.S.C. § 1391 ................................................................................................................2

28 U.S.C. § 1391(a)(3).......................................................................................................2

28 U.S.C. § 1391(b) ........................................................................................................2-3

28 U.S.C. § 1391(b)(3) ......................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 9(b) ...................................................................................................... 12-13

Fed. R. Civ. P. 12(b)(6)................................................................................................... 5-6

Plaintiff, the Bank of New York Mellon Trust Company, N.A. (f/k/a The Bank of New York Trust Company, National Association), as Trustee for Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-IQ14 (the "Plaintiff") respectfully submits this Memorandum of Law in Opposition to the Motion of Defendants Peter H. Gebert, Ellen J. Gebert, Hampton C. Randolph and Evelyn M. Randolph (collectively, the "Defendants") to Dismiss The Complaint or, In The Alternative, To Transfer Venue (the "Motion"), and in opposition thereto, states as follows:

## I.      Introduction

Defendants have moved to dismiss the Complaint for improper venue or, in the alternative, to have the case transferred to the Eastern District of Pennsylvania, and they have additionally moved to dismiss Plaintiff's claims of fraud and conversion based on various theories.  Because Defendants have consented to venue in this Court, and because Plaintiff's fraud and conversion claims are proper and adequately pled under the circumstances, Defendants' Motion should be denied in its entirety.

## II.     Argument

### A.      Venue is Proper in this Court

#### 1.      *Standard of Review For A Motion To Dismiss For Improper Venue*

In defending against a motion to dismiss for allegedly improper venue, a plaintiff must only make a *prima facie* showing that venue is proper in the chosen forum unless the court holds an evidentiary hearing on the issue of venue, in which case proper venue must be shown by a preponderance of the evidence.  *Bank of Am., N.A. v. Wilmington Trust FSB*, 943 F. Supp. 2d 417 (S.D.N.Y. 2013); *Sanderson v. Horse Cave Theatre 76*, 881 F. Supp. 2d 493, 506 (S.D.N.Y. 2012).  Plaintiff has satisfied both standards, and the Complaint should not be dismissed or transferred.

2.      *Defendants Consented to Jurisdiction and Venue in this Court*

As admitted in the Motion, the Guaranty[1] provides that Defendants consent to the

jurisdiction of any federal or state court located in New York "having proper venue."  Guaranty

at ¶ 13.  Defendants' argument that the foregoing provision only constitutes a consent to

jurisdiction, but not a consent to venue, is an illogical reading of the provision, and would render

the provision meaningless in violation of New York law.

Defendants cannot avoid the fact that they have contractually consented to venue in New

York despite that an independent basis for venue in this forum may not otherwise exist.  *See*

*Nat'l Union Life Ins. Co. v. Casmalia Res., Ltd.*, No. 89-1045, 1990 U.S. Dist. LEXIS 8502, at

*11 n.4 (S.D.N.Y. July 11, 1990) (venue proper even though requirements of 28 U.S.C. § 1391

not met because "[v]enue, as with personal jurisdiction, may be created by the contractual

agreement of the parties").  Indeed, when Defendants agreed in the Guaranty to submit to

personal jurisdiction in New York, they necessarily waived any objection to venue here.  *See*

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996) (finding that § 1391(a)(3),

predecessor to § 1391(b)(3), does not mean that venue is improper in one district merely because

there is another district in which defendants are subject to personal jurisdiction by virtue of

consent).

Defendants argue that in order for the consent to venue in the Guaranty to have any

effect, it is a necessary prerequisite that an independent basis for venue in New York otherwise

exist under the venue statute, 28 U.S.C. § 1391(b).  The foregoing suggested interpretation

would render the subject provision of the Guaranty meaningless due to its circular nature.  If, as

Defendants have argued in the Motion, the statutorily prescribed bases for venue under 28 U.S.C.

---

[1]      All capitalized terms not defined herein shall have the meaning ascribed to them in the
Complaint.

§ 1391(b) are the exclusive means by which venue may be proper, there would be no circumstances under which the courts in New York could ever have proper venue and the consent to personal jurisdiction in New York contained in the Guaranty would be rendered meaningless. *See, e.g., Coface v. Optique DuMonde, Ltd.*, 521 F. Supp. 500, 506 (S.D.N.Y. 1980) ("To consent to personal jurisdiction in New York courts without also consenting to venue would thus be a meaningless exercise, at least in this case where each party reasonably should have anticipated that venue in this forum would be improper but for such a forum selection clause.").

As in *Coface*, the parties to the Guaranty were aware at its inception that given the location of the parties and the Mortgaged Premises, there might not be any facts under which venue in New York would be proper under 28 U.S.C. § 1391(b). Nevertheless, the parties in this matter—sophisticated parties in a commercial transaction—consented to jurisdiction and, therefore, venue in New York. To adopt Defendants' argument that Defendants specifically preserved an objection to venue in New York, the court would have to rule that the parties intended the Governing Law section of the Guaranty to have no meaning at the time the Guaranty was drafted. Such a result should not be permitted, as it is improper under New York law. *See Millgard Corp. v. E.E. Cruz/Nab/Frontier-Kemper*, No. 99-2952, 2002 U.S. Dist. LEXIS 23921, at *38-39 (S.D.N.Y. Dec. 12, 2002) (rejecting interpretation of contract provision which would render certain language a nullity as such interpretation would violate "'cardinal principle of contract construction'" that a contract be read to give effect to all its provisions and render them consistent with each other).

The Guaranty further provides that it shall be "governed by, and construed in accordance with, the laws of the State of New York." Guaranty at ¶ 13. Thus, the consent to venue

contained in the Guaranty is a logical extension of the choice of law provision in the contract between the parties.  Indeed, federal courts recognize that it is generally preferable for a controversy to be decided by a court sitting in the state whose law governs the controversy.  *See, e.g.*, *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 551 (S.D.N.Y. 2008) ("Where, as here, there are state law claims, the forum's familiarity with governing law supports retention of the action.") (citation omitted); *Laumann Mfg. Corp. v. Castings USA, Inc.*, 913 F. Supp. 712, 722 (E.D.N.Y. 1996) ("[T]here is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case . . . .") (internal quotations omitted).  Where a choice of law provision specifies that New York law should govern the contract at issue, transfer of venue from New York is disfavored.  *Breeden v. Tricom Bus. Sys., Inc.*, 244 F. Supp. 2d 5, 9 (N.D.N.Y. 2003).  The District Court for the Southern District of New York is located in the state whose law governs the Guaranty, and this strongly favors maintaining venue here.

As courts within this district have previously noted, the existence of a forum selection clause, even if permissive rather than mandatory, is a "significant factor" to be weighed in determining whether venue is proper in a particular court.  *See JSP Int'l v. Tri-Tech Grp., Inc.*, No. 94-2422, 1995 U.S. Dist. LEXIS 9684, at *16 (S.D.N.Y. July 13, 1995) (enforcing venue in New York where no operative facts occurred in New York but where parties agreed to permissive forum selection clause consenting to jurisdiction of New York courts).  Because the parties here consented to the jurisdiction of New York state and federal courts, Defendants should not now be allowed to argue that venue is improper and that their consent to jurisdiction and venue in the Guaranty is meaningless.  *See A.I. Credit Corp. v. Liebman*, 791 F. Supp. 427, 430 (S.D.N.Y. 1992) (stating that forum selection clauses are *prima facie* valid and enforceable

unless opposing party establishes fraud, undue influence or overreaching with respect to negotiation of forum selection clause itself).  For the foregoing reasons, the Complaint should not be dismissed, and this case should not be transferred on the basis of improper venue.

> 3.   *Should The Court Find That Venue is Not Proper in This Court, The Appropriate Remedy is a Transfer of Venue*

Defendants concede that if venue is not found to be proper in this Court, that venue is proper in the United States District Court for the Eastern District of Pennsylvania.  Should the Court determine that venue is not proper in the Southern District of New York—which Plaintiff disputes—the Court should transfer this case to the Eastern District of Pennsylvania, rather than dismissing the case, as Defendants request.  A dismissal of this case, as opposed to a transfer of venue, would be inefficient and would result in a waste of the parties' and judicial time and resources.

**B.   Plaintiff's Fraud and Conversion Claims Should Not Be Dismissed**

> 1.   *Standard of Review For A Motion to Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted*

Defendants move to have Plaintiff's fraud and conversion claims dismissed based upon an alleged failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants have not met the standard for dismissing claims under Rule 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) is properly granted only if, taking all factual allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, the court nevertheless concludes that the plaintiff has failed to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In considering a motion to dismiss, a court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  While "[t]hreadbare recitals of the elements of a cause of action, supported by mere

5

conclusory statements, do not suffice," the Rule 12(b)(6) standard "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint states a cause of action and will survive a motion to dismiss when the complaint establishes a "plausible" claim by pleading facts that are more than "merely consistent with" a defendant's liability. *Id.* The "plausibility" standard "is not akin to a probability requirement, but it asks for more than a sheer possibility" that a plaintiff is entitled to relief. *Id.* All that the plausibility standard requires is that the plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Plaintiff's fraud and conversion claims are properly pled, and Defendants' arguments in support of dismissal are meritless.

> 2. *Plaintiff's Fraud and Conversion Claims Are Not Simply Restated Tort Claims*

Defendants make several arguments in an attempt to discredit Plaintiff's fraud and conversion claims, but none should be countenanced. First, Defendants assert that Plaintiff's fraud and conversion claims are duplicative of Plaintiff's breach of contract claim, and should be dismissed on this basis. Defendants are simply wrong.

Plaintiff's cause of action for breach of contract arises from the Liabilities. The "Liabilities" are defined in the Complaint as the *liability of the Borrower* to Plaintiff for its "misappropriation of the Payments arising from the Mortgaged Premises, for its misrepresentations and/or omissions regarding the same and for all damages sustained by Plaintiff as a result of the same." Complaint ¶ 56. The Guaranty is merely the instrument which gives rise to Defendants' obligation to Plaintiff for such Liabilities. Because Defendants have not satisfied the Liabilities as required under the terms of the Guaranty, they have breached the terms thereof. This is the essence of Plaintiff's claim for breach of contract.

Plaintiff's causes of action for fraud and conversion, on the other hand, arise from Defendants' direct liability to Plaintiff for Defendants' own misconduct, fraudulent actions and misappropriation of Plaintiff's property which Defendants committed or caused Borrower to commit as a result of their control of Borrower. The actions of Defendants that form the basis of Plaintiff's fraud and conversion claims are separate from Defendants' obligation to satisfy the Liabilities under the Guaranty. This distinction is made most clear by consideration of a different factual scenario, one in which Defendants served as guarantors under the Guaranty but were not individuals who controlled the Borrower or who controlled entities that in turn controlled the Borrower. Under the foregoing hypothetical facts, Defendants would still be accountable to Plaintiff for the Liabilities by virtue of the operation of the Guaranty and their failure to satisfy the Liabilities would give rise to a breach of contract claim. However, if Defendants did not control the Borrower or control entities that control the Borrower, Plaintiff would not necessarily be able to assert independent causes of action for fraud or conversion. It is because Defendants exercised their control and directed the Borrower's misconduct, fraudulent actions and misappropriation of Plaintiff's property, or controlled entities that directed such misconduct, fraudulent actions and misappropriation, that independent actions for fraud and conversion exist against Defendants. Accordingly, the fraud and conversion claims are not simply duplicative of Plaintiff's breach of contract claim.

Courts in New York have recognized the distinction between causes of action for breach of contract and causes of action for fraud and conversion. For example, in *125 West 22nd St. Holding, LLC v. Calabrese Associates, Inc.*, the plaintiff alleged claims of both breach of contract and fraud where the defendant misrepresented how much of a construction project was finished and the amounts due from the plaintiff to a subcontractor. No. 602315/07, 2008 N.Y.

7

Misc. LEXIS 10163 (N.Y. Sup. Ct. Aug. 1, 2008).  The court held that these misrepresentations were "extraneous" and "collateral" to the contract, and therefore not duplicative of the breach of contract claim.  *Id.*; *see also Moses v. Martin*, 360 F. Supp. 2d 533 (S.D.N.Y. 2004) (denying motion to dismiss conversion claim after finding that conversion claim was distinct from breach of contract claim where defendant collected payments owed to plaintiff and then failed to remit those payments to plaintiff pursuant to their agreement, thereby interfering with plaintiff's superior possessory right); *Kubin v. Miller*, 801 F. Supp. 1101 (S.D.N.Y. 1992) (finding that plaintiff's conversion claim was not duplicative of his breach of contract claim where conversion claim alleged that defendant had diverted business, assets and profits for personal use and contract claim merely asserted failure to perform).  Like the facts of the foregoing cases, Defendants' actions as alleged by Plaintiff were extraneous to Defendants' obligations under the Guaranty to satisfy the Liabilities once the Borrower was in default.  Defendants' misappropriation of Plaintiff's property, which Defendants effectuated or caused Borrower to effectuate, constitutes conduct collateral to Defendants' obligations under the Guaranty and interfered with Plaintiff's superior rights under the Loan Documents.  Notably, despite the fact that Plaintiff cited the above referenced cases in its response to Defendants' Pre-Motion Letter, Defendants have failed to rebut, or even address, Plaintiff's argument in opposition to this aspect of Defendants' Motion to Dismiss.  The reason for this is clear – Defendants have no rebuttal, as Plaintiff's fraud and conversion claims are not duplicative of its breach of contract claim.

Defendants' reliance on *Edwil Industries, Inc. v. Stroba Instruments Corp.*, 131 A.D.2d 425 (N.Y. App. Div. 2d Dep't 1987) is misplaced, as that case actually supports Plaintiff's

DM3\2350105.3

position.[2]  The only substantive paragraph in the two paragraph opinion in the *Edwil Industries* case states, in full, as follows:

> It is well settled that no cause of action to recover damages for fraud arises when the only fraud charged relates to a breach of contract (*see, Spellman v Columbia Manicure Mfg. Co.*, 111 AD2d 320; *Gould v Community Health Plan*, 99 AD2d 479).  The gravamen of the seventh cause of action is that the defendants, pursuant to a contract, were obligated to render accurate statements of sales, and breached the contract by making false statements of sales.  Since the cause of action at issue here does not allege the breach of a duty extraneous to, or distinct from the contract between the parties, Special Term properly dismissed that cause of action (*see, North Shore Bottling Co. v Schmidt & Sons*, 22 NY2d 171; *Channel Master Corp. v Aluminium Ltd. Sales*, 4 NY2d 403).

*Id.* at 425.  As can be gleaned from the sparse facts contained in the opinion, the *Edwil Industries* court affirmed the dismissal of a fraud claim because the contractual duty of the defendant was to provide an "accurate statements of sales," and the fraud claim was premised upon "making false statements of sales." *Id.*  Because the fraud claim was based solely on the defendant's contractual duty to provide an accurate statements of sales, it was properly dismissed.  *Edwil Industries* is easily distinguishable from this case where, as discussed above, Plaintiff's tort claims are based on actions by the Defendants that were extraneous to their obligations under the Guaranty to satisfy the Liabilities.

Additionally, the damages sought by Plaintiff for its various causes of action also support the fact that Plaintiff's claims for fraud and conversion are not duplicative of Plaintiff's breach of contract claim.  Plaintiff's cause of action for breach of contract seeks compensatory damages on account of the Liabilities.  The damages sought by Plaintiff in connection with its claims for fraud and conversion include both compensatory and punitive damages.  Accordingly, the

---

[2]     *Edwil Industries* is a two paragraph opinion from 1987.  While it is unclear how Defendants can know from those two paragraphs that *Edwil Industries* is "indistinguishable from our case" (Motion at 13), the fact remains that the *Edwil Industries* court states the same proposition cited by Plaintiff itself in the case at bar:  where a tort claim is based upon circumstances "extraneous to, or distinct from the contract between the parties," the tort claim is not duplicative of a contract claim. 131 A.D.2d at 425.

damages sought for the fraud and conversion claims are not wholly duplicative of, and may in fact exceed, the "Liabilities."  The differing nature of the damages sought by Plaintiff in its various causes of action underscores the fact that such causes of action are distinguishable.  As explained by the Court in *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, breach of contract damages are limited to "the loss caused by failure to perform the stipulated bargain," while fraud damages are intended to compensate the plaintiff for "what he lost because he made the bargain, not what he would have gained had it been performed."  95 A.D.2d 5, 22-23 (N.Y. App. Div. 4th Dep't 1983).  Because the two measures of damages are distinct, the *Cayuga* court found that the underlying claim of fraud was not duplicative of the plaintiff's breach of contract claim, and accordingly rejected the defendant's motion to dismiss the fraud claim.  *Id.*  The damages sought by Plaintiff on account of its tort claims in this matter are distinct from the damages it seeks for breach of contract.  Therefore, Plaintiff's tort claims should not be dismissed as duplicative of its breach of contract claim.

3.      *The Economic Loss Doctrine Does Not Apply to Plaintiffs' Fraud and Conversion Claims*

Defendants also argue that Plaintiff's tort claims should be dismissed under the "economic loss rule."  Defendants cursory and underdeveloped argument overlooks the fundamental flaw in this position: where, as here, the asserted intentional tort claims are based upon conduct different from the conduct upon which the asserted breach of contract claim is based, the economic loss rule is inapplicable.

While New York courts do recognize the applicability of the economic loss doctrine in certain circumstances, the doctrine does not apply to claims where the damages sought for the tort claims at issue are distinct from the damages sought for the breach of contract claim.  *See, e.g.*, *Genna v. Sallie Mae, Inc.*, No. 11-7371, 2012 U.S. Dist. LEXIS 54044, *9-10 (S.D.N.Y.

10

April 16, 2012).  As described above, Plaintiff's claims for fraud and conversion arise from actions by Defendants that are extraneous to their obligation to satisfy the Liabilities under the Guaranty, and seek different damages for that conduct.  Under these circumstances, the economic loss doctrine does not operate to bar Plaintiff's tort claims.  *See EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 277-78 (S.D.N.Y. 2004) ("New York courts have routinely permitted fraud and contract claims to proceed in tandem for the purpose of recovering pure economic loss.").

Defendants' argument here is the same as that made by the defendant in *EED Holdings*. In *EED Holdings*, the court noted that the defendant had cited no cases, and the court itself had been unable to locate, any "authority for the application of the economic loss doctrine to claims . . . that sound in fraud."  *Id.* at 278.  Because Plaintiff's tort claims sound in fraud, the economic loss rule is equally inapplicable in this case.  In fact, Defendants in this case have relied on certain of the same cases relied upon by the defendant in *EED Holdings*, which the court noted "all stand for the uncontroversial (and entirely irrelevant) proposition that the economic loss rule prevents the assertion of negligence or strict liability claims where plaintiff's injury is purely economic."  *Id.* at 278 n.7.  Here, Plaintiff is not asserting negligence and strict liability claims. Rather, Plaintiff is asserting intentional tort claims, which are not subject to New York's economic loss doctrine.  Accordingly, Plaintiff's tort claims are proper.  *Accord Computech Int'l, Inc. v. Compaq Computer Corp.*, No. 02-2628, 2004 U.S. Dist. LEXIS 9120, at *28 (S.D.N.Y. May 21, 2004) ("The parties have not cited to any case in the New York courts applying the economic loss doctrine to an intentional tort, nor has one been found by the Court.").

Defendants' attempt to force this case into the framework of the economic loss rule is unavailing.  Under Defendants' asserted construction of the rule, no fraud claim would ever be

11

viable.  Fraud claims, by their very nature, seek damages for economic loss rather than personal injury or property damage.  Were Defendants correct that because Plaintiff "claims no injury to person or property … the economic loss rule serves as a[n] … independent basis for dismissing plaintiff[']s fraud and conversion claims" (Motion at 15), there would never be any circumstances under which a fraud or conversion claim would be proper pursuant to the economic loss rule.  New York law does not support this interpretation.  *See EED Holdings*, 387 F. Supp. 2d at 277-78.  The economic loss rule is inapplicable to this case, and is not a basis upon which to dismiss Plaintiff's fraud and conversion claims.

4.     *Plaintiff's Fraud Claim is Adequately Pled*

Defendants next argue that Plaintiff's fraud claim does not meet the pleading standard of Federal Rule of Civil Procedure 9(b).  As noted by this Court, a plaintiff must allege "the circumstances constituting fraud" such that "a thorough reading of the Complaint puts the defendant on fair notice both as to the claims and the factual ground upon which the claims are based."  *Schaeffer v. Kessler*, No. 12-8576, 2013 U.S. Dist. LEXIS 38781, at *23 (S.D.N.Y. March 20, 2013) (holding that fraud allegations met the Rule 9(b) standard).  In this case, Plaintiff has adequately alleged the circumstances constituting fraud; and, a thorough reading of the Complaint has certainly put Defendants on fair notice as to the claims against them and the factual grounds on which those claims are based.

Plaintiff alleges, *inter alia*, that Defendants made or caused the Borrower to make misrepresentations of fact and/or material omissions of fact to Plaintiff in connection with the misappropriation of the Payments arising from the Mortgaged Premises, all for Defendants' own benefit.  Complaint at ¶ 66.  This is the essence of the fraud perpetrated by Defendants:  they misappropriated the income generated by the Mortgaged Premises to themselves or entities controlled by them, rather than using such income to make the required payments under the Loan

Documents or otherwise generally remitting such income to Plaintiff after the occurrence of the Defaults and then misrepresented or made material omissions to Plaintiff regarding the whereabouts of such income. This is not a case where there was a detailed scheme in place, which requires detailed allegations. Plaintiff has alleged the facts of the fraud, and has therefore met the Rule 9(b) requirements. *See id.*; *see also IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1058 (2d Cir. 1993).

Defendants' reliance on *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157 (S.D.N.Y. 2012) is misplaced. As noted by this Court in *Cruz*, in order to adequately plead fraud under Rule 9(b), a plaintiff must provide facts "giving a strong inference of fraudulent intent." 855 F. Supp. 2d at 176. This may be accomplished by either "(1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* Plaintiff has met this standard. As noted above, Plaintiff has alleged (1) facts that show that Defendants had both motive and opportunity to commit fraud (Defendants controlled the Borrower or entities that controlled the Borrower and thereby prevented the Borrower from making Payments to Plaintiff, all for Defendants' own benefit, Complaint at ¶ 66), and; (2) facts that show strong circumstantial evidence of conscious misbehavior or recklessness (despite the fact that the Mortgaged Premises continued to generate income, no Payments were remitted to Plaintiff, and instead such income was remitted to entities controlled by Defendants, Complaint at ¶¶ 36-43). Under these circumstances, Plaintiff has satisfied the Rule 9(b) pleading requirements for fraud, and Plaintiff's fraud claim should not be dismissed.[3]

---

[3]    Should the court find that Plaintiff's fraud claim has not met the pleading standard required for Rule 9(b)—which Plaintiff disputes—the proper remedy would be to grant Plaintiff leave to amend its Complaint to replead its fraud claim with the required specificity, rather than dismissal, as Defendants request.

13

5.       *Defendants Had a Duty To Disclose Under Applicable New York Law*

Defendants' final argument in support of their attempt to have Plaintiff's fraud claim dismissed is that Defendants had no duty to disclose that they were directing the Borrower to misappropriate Payments made on account of the Mortgaged Premises rather than remitting those Payments to Plaintiff.  Contrary to Defendants' assertions, Defendants did have a duty to disclose the material fact of the Borrower's misappropriation of the Payments based upon Defendants' relationship with Plaintiff, as well as Defendants' superior knowledge of the facts surrounding the receipt and misappropriation of the Payments.  Under New York law, a plaintiff can establish that a defendant has a duty to disclose in order to state a claim for fraudulent omission where, *inter alia*, "the parties stand in a fiduciary or confidential relationship with each other" or "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d. Cir. 1993).  Both of these situations are present here and, accordingly, Defendants are under a duty to disclose.

The type of relationship necessary to establish a duty to disclose under New York law is not limited to strictly fiduciary relationships.  Rather, even "informal relationships where it can be readily seen that one party reasonably trusted another," such as bank and depositor or majority and minority shareholder, are adequate for purposes of establishing a relationship sufficient to impose a duty to disclose.  *Id.* at 151.  The relationship between Defendants and Plaintiff is similar to that of a bank and a depositor, where the former entity has complete control over the funds of the latter, and is trusted to treat such funds in accordance with the agreement between them.  In point of fact, upon the occurrence of a Default under the terms of the Assignment of Leases and Rents, the Borrower's license to collect and retain the Payments was automatically revoked and the Borrower was required to hold all such Payments "as trustee under a

14

constructive trust for the benefit of the [Plaintiff]."  Complaint at Exhibit D, *Assignment of Leases and Rents*, p. 3, Section 1.  Thus, from and after the occurrence of the Defaults, the Borrower stood in a fiduciary relationship with Plaintiff and was charged with the duty of holding the Payments in trust for Plaintiff.  Defendants controlled the Borrower or entities that controlled the Borrower and therefore also stood in a confidential or fiduciary relationship with Plaintiff.  As a result of that relationship, Defendants had a duty to disclose to Plaintiff the misappropriation of the Payments to Defendants' benefit.  *See id.* at 150-51.

Defendants also had a duty to disclose based upon their superior knowledge of the facts and circumstances surrounding the Payments collected by the Borrower and the Borrower's disposition of the same.  *See id.* at 151-52 ("[W]e observe a tendency in New York to apply the rule of 'superior knowledge' in an array of contexts in which silence would at one time have escaped criticism."); *Zaccaro v. Shah*, 746 D. Supp. 2d 508, 522 (S.D.N.Y. 2010); *State v. Gen. Motors Corp.*, 120 Misc. 2d 371, 374 (N.Y. Sup. Ct. 1983) ("If one party has superior knowledge or has a means of knowledge not available to both parties, then he is under a legal obligation to speak and silence would constitute fraud.").  Defendants controlled the Borrower, either directly or through other entities, and therefore were aware that the Borrower was collecting the Payments and disposing of such funds to uses other than to pay Plaintiff, all in violation of the Loan Documents.  The information of which Defendants had knowledge was not publicly available, and therefore Plaintiffs, especially in light of Defendants' concealment, did not have ready access to the same information.  Defendants were also aware that Plaintiff was acting on the basis of its mistaken knowledge, as the only knowledge Plaintiff had was the false knowledge imparted by Defendants through the Borrower's misrepresentations.  Based upon the foregoing, Defendants had a duty to disclose that they were directing the Borrower to misappropriate

15

Payments made on account of the Mortgaged Premises rather than remitting those Payments to Plaintiff or holding them in trust for Plaintiff.  *See Brass*, 987 F.2d at 151-52; *Zaccaro*, 746 D. Supp. 2d at 522; *Gen. Motors Corp.*, 120 Misc. 2d at 374.

Allegations of a duty to disclose may be inferred from other allegations contained in the Complaint.  *Green v. Beer*, No. 6-4156, 2009 U.S. Dist. LEXIS 27503, at *24 (S.D.N.Y. March 31, 2009) ("Plaintiffs allege facts from which such [superior] knowledge can be inferred.").  Plaintiff asserts that it has alleged sufficient facts from which a duty to disclose may be inferred either on the basis of a confidential/fiduciary relationship or superior knowledge.  However, to the extent that the Court finds that Plaintiff has not adequately pled a duty to disclose in the Complaint, the proper remedy is to allow Plaintiff leave to amend its Complaint to add allegations regarding Defendants' duty to disclose.  Given the state of the proceeding, and Defendants' awareness of Plaintiff's asserted claims, such an opportunity to amend will not cause any prejudice to Defendants.

> 6. *Plaintiff's Demand for Punitive Damages is Proper*

Defendants also seek to "dismiss" Plaintiff's demand for punitive damages on the grounds that New York law permits an award of punitive damages for breach of contract only under certain circumstances which are allegedly absent in this case.  First, as is evident from the Complaint, Plaintiff seeks an award of punitive damages only in connection with its causes of action for fraud and conversion, not in connection with its claim for breach of contract.  Complaint, pp. 11-14.  Accordingly, the case law cited by Defendants regarding whether punitive damages are appropriate for breach of contract claims is entirely irrelevant.  Plaintiff's demand for punitive damages in connection with its fraud and conversion claims is proper.

Additionally, Plaintiff's entitlement to damages, punitive or otherwise, is to be determined after a trial on the merits, and cannot be properly addressed in a motion to dismiss.

Defendants have cited no authority to support their untenable position that a demand for damages recoverable pursuant to a particular cause of action can be "dismissed" upon a motion to dismiss. Such a request is not procedurally appropriate, and should not be considered.

## III.   Conclusion

For the foregoing reasons, Plaintiff, Bank of New York Mellon Trust Company, N.A. (f/k/a The Bank of New York Trust Company, National Association), as Trustee for Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-IQ14, respectfully requests that the Court deny Defendants' Motion to Dismiss the Complaint or, in the Alternative, to Transfer Venue in its entirety.


Dated: New York, New York               DUANE MORRIS LLP
       January 31, 2014

                                  By:   */s/ Suzan Jo*
                                  Suzan Jo
                                  1540 Broadway
                                  New York, NY  10036-4086
                                  (212) 692-1088
                                  (212) 214-0924 (fax)

                                  Lauren Lonergan Taylor (admitted *pro hac vice*)
                                  Catherine E. Beideman (admitted *pro hac vice*)
                                  30 S. 17th Street
                                  Philadelphia, PA 19103
                                  (215) 979-1000
                                  *Attorneys for Plaintiff*

17

## CERTIFICATION OF SERVICE

I, Suzan Jo, hereby certify that on January 31, 2014, I caused a copy of **Plaintiff's Memorandum of Law In Opposition to Defendants' Motion to Dismiss The Complaint or, In The Alternative, to Transfer Venue** to be served upon the following counsel by electronic mail via the Court's CM/ECF System:

Michael Tremonte, Esq.
Mark Elliot Cuccaro, Esq.
Sher Tremonte LLP
80 Broad Street
Suite 1301
New York, NY 10004
mtremonte@shertremonte.com
mcuccaro@shertremonte.com

David L. Braverman, Esq.
Peter J. Leyh, Esq.
Braverman Kaskey, P.C.
One Liberty Place
1650 Market Street
Philadelphia, PA 19103
dbraver@braverlaw.com
pleyh@braverlaw.com

*Counsel for Defendants*

Under penalty of perjury, I declare the foregoing to be true and correct.


Dated: January 31, 2014                              /s/ Suzan Jo
       New York, New York                    Suzan Jo